**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

BAYLOR UNIVERSITY,

     Plaintiff,

v.

TRUSTEES OF BOSTON UNIVERSITY,

     Defendant.

Civil Action No. 6:25-cv-00352

**BOSTON UNIVERSITY'S MOTION FOR JUDGMENT ON THE
PLEADINGS UNDER FED. R. CIV. P. 12(C)**

**TABLE OF CONTENTS**

I.    Introduction.................................................................................................................... 1

II.    Legal Standards.............................................................................................................. 3

    a.    Rule 12(c) Permits Judgment for Boston University at This Stage. .................................. 3

    b.    Baylor's U.S. and Texas Trademark Claims are the Same. ............................................... 3

    c.    The Consent Agreement is Clear and Interpreted Within its Four Corners. ...................... 4

III.    Argument:  Judgment Should Be Granted for Boston University ......................................... 5

    a.    The Agreement Expressly Covers the
    Interlocking BU Mark and Allows its Use by Boston University. ..................................... 7

    b.    The Agreement Does Not Rely on Any Stylistic Differences to
    Distinguish Between Baylor's and Boston University's Uses of the Mark. ....................... 7

    c.    The File History of Baylor's '069 Trademark
    Application Confirms the Intent of the Parties. .................................................................. 8

IV.    Conclusion .................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amazing Spaces, Inc. v. Metro Mini Storage,*
    608 F.3d 225 (5th Cir. 2010) ........................................................................... 3,4

*American Rice, Inc. v. Producers Rice Mill, Inc.,*
    518 F.3d 321 (5th Cir. 2008). .......................................................................... 4,5

*Balles v. Babcock Power Inc.,*
    476 Mass. 565 (2017) ...................................................................................... 4,5

*Gentilello v. Rege,*
    627 F.3d 540 (5th Cir. 2010) .............................................................................. 3

*Guidry v. Am. Pub. Life Ins. Co.,*
    512 F.3d 177 (5th Cir. 2007) .............................................................................. 3

*In re Katrina Canal Breaches Litigation,*
    495 F.3d 191 (5th Cir. 2007) .............................................................................. 3

*Norris v. Hearst Trust,*
    500 F.3d 454 (5th Cir. 2007) .............................................................................. 3

*Perthuis v. Baylor Miraca Genetics Laboratories, LLC,*
    645 S.W.3d 228 (Tex. 2022) ............................................................................... 7

*Rafuse v. Advanced Concepts and Technologies International LLC,*
    No. 6:20cv00178-ADA, 2022 WL 3030792 (W.D. Tex. Aug. 1, 2022) ......................... 3,4,5

*Texas v. American Tobacco Co.,*
    463 F.3d 399 (5th Cir. 2006)………………………………………………………..4

**Other Authorities**

15 U.S.C. § 1114…………………………………………………………………………..3,4

15 U.S.C. § 1125(a)………………………………………………………………………….3

Fed. R. Civ. P. 12(c)………………………………………………………………………...2,3

Fed. R. Evid. 201(b)(2)…………………………...…………………………………………1

## I.    INTRODUCTION

Baylor University's Complaint attempts to renege on a nearly 40-year written agreement that specifically permits the parties' mutual use of the interlocking "BU" trademark.  The history related to the parties' agreement began in 1987 when Baylor applied for a trademark registration for "BU" with stylized interlocking letters (an "Interlocking BU").  *See* Complaint, ¶19.  Boston University opposed Baylor's application.   The parties settled the dispute via a 1988 Consent Agreement ("Agreement").  Doc. 1, Complaint ¶19-second occurrence; Doc. 16, Answer ¶19-second occurrence; Doc. 16-1, Ex. A.[1]  That Agreement specifically concerns the Interlocking BU mark; the Agreement states that it is "for the mark 'BU'" as shown in Baylor's trademark application and two registrations cited in the Agreement's RE: line (Ex. A at 1), each of which identifies an interlocking BU with the "U" on a lower line than the "B."  Exs. B, C, D;[2] *see* Complaint ¶15.

The parties acknowledged that both schools had already been using the "BU" mark for at least 75 years without causing a single instance of confusion.  Ex. A, ¶1.  Therefore, the two schools agreed that "it is unlikely the public will be confused by their respective uses of the **same mark** and hereby consent each to the other's use of the mark."  Ex. A, p. 2 last ¶ (emphasis added).  During nearly four decades of Boston University's post-Agreement use, Baylor took no legal action. Despite entering a Consent Agreement with Boston University for the parties to continue to use the same mark, Baylor's Complaint attempts to rewrite history and ignore the clear terms of that Agreement, barely acknowledging the Agreement and only selectively quoting one snippet. Complaint ¶¶19, 20.  Baylor now contends that the Agreement only permits Boston University's side-

---

[1] Exhibits A through I are attached to the Pogorzelski Declaration filed with this Motion.

[2] Baylor's Trademark Registration Nos. 1,468,277 (Ex. B), 1,474,216 (Ex. C), and 1,558,080 (Ex. D, which issued from Application Serial No. 667,069) are public records at the United States Patent and Trademark Office, of which the court may take judicial notice on this motion.  Fed. R. Evid. 201(b)(2).

by-side horizontal use of BU.  *See* Complaint ¶¶18, 21.  According to Baylor, Boston University's use of an *interlocking* BU is a new development, one that was neither contemplated nor permitted by the 1988 Agreement.  *Id.* ¶¶19, 21.  This is inaccurate and contradicted by the terms of the Agreement and the trademark application cited in the Agreement.  Ex. A ¶1 ("both schools have used the mark for at least seventy-five years"); Ex. F (Baylor's Answer to Opposition), ¶6.

As a factual matter, discovery will show that Boston University has used an interlocking BU mark going back 150 years.  Examples date back to frieze work on an 1880s building and yearbooks from the 1890s and throughout the 1950s, '60s, '70s, '80s, and '90s, and 2000 through today on sports equipment, apparel, and class rings.

Putting aside these facts, this Motion succeeds because the Agreement unambiguously permits both universities to use "the same mark," which the Agreement defines as the very same "interlocking BU" marks that Baylor is asserting in this case.  *See* Ex. A at RE: line, and Complaint ¶15 (both citing to Baylor Registration Nos. 1,468,277 (Ex. B) and 1,474,216 (Ex. C) and to Baylor Application No. 667,069/Registration No. 1,558,080 (Ex. D)).  In fact, the Agreement expressly acknowledges that consumers can readily tell one BU from another because of various distinctions, such as different school colors, other references to identify the school, and different mascots.

The Agreement memorializes a decades-long understanding that both Baylor and Boston University have a long history of using the "BU" mark at issue and that there is no history or risk of the public being confused by shared use of the mark.  In fact, Baylor's Complaint confirms that history in making no allegation of any actual confusion despite years of Boston University use under the Consent Agreement consenting to that use.  Baylor's Complaint should be dismissed and judgment issued for Boston University under Rule 12(c).

## II.     LEGAL STANDARDS

### a.     Rule 12(c) Permits Judgment for Boston University at This Stage.

This motion is timely because Fed. R. Civ. P. 12(c) authorizes a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. The "standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). "The plaintiff must plead enough facts to state a claim to relief that is plausible on its face" and the Court must accept all well-pleaded facts as true (*id.*), but the Court need not accept as true the conclusory allegations, unwarranted factual inferences, and legal conclusions raised by Baylor. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

When a contract is referenced in the complaint and is central to the plaintiff's claims, the Court "may consider the terms of the contract[] in assessing the motion to dismiss." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Rafuse v. Advanced Concepts and Technologies International LLC,* No. 6:20cv00178-ADA, 2022 WL 3030792 at *7, *9-10, *19-20 (W.D. Tex. Aug. 1, 2022) (considering contract on Rule 12(c) motion). The Court may also take judicial notice of matters of public record including the U.S. Patent and Trademark Office Records cited as Exhibits B, C, and D. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007).

### b.     Baylor's U.S. and Texas Trademark Claims are the Same.

Baylor alleges federal trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114) and unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). Complaint, ¶¶43, 50. Although the Lanham Act establishes these as separate causes of action, the same tests apply under both sections to determine whether the marks are protectible and whether they have been infringed, regardless of whether they are registered or unregistered. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n. 8 (5th Cir. 2010).

3

When a plaintiff alleges trademark infringement under both federal law and Texas law, the federal analysis under the Lanham Act will be dispositive because "[a] trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." *Amazing Spaces*, 608 F.3d at 235 n. 7 (quotes omitted). Therefore, Baylor's claims of trademark infringement are controlled by Section 32 of the Lanham Act, which "provides a cause of action for infringement where one uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive." *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

### c.    The Consent Agreement is Clear and Interpreted Within its Four Corners.

The Agreement does not specify whether it is governed by Texas or Massachusetts law, but both jurisdictions generally follow the rule that "when the language of a contract is clear, it alone determines the contract's meaning." *Balles v. Babcock Power Inc.*, 476 Mass. 565, 571 (2017); *see also Texas v. American Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) ("When parties disagree over the meaning of an unambiguous contract, the intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written."). Under Texas law, a contract is not ambiguous if it is "worded such that it can be given a definite or certain legal meaning." *American Tobacco*, 463 F.3d at 399; *Rafuse,* 2022 WL 3030792, at *20 (writing or term is not ambiguous because it lacks clarity or the parties offer different interpretations) (citation omitted).

Because interpretation of the meaning of a term in a contract is a question of law (*Balles*, 476 Mass. at 571, *Rafuse*, 2022 WL 3030792 at *20), this case is appropriate for determination now.

4

**III.    ARGUMENT:  JUDGMENT SHOULD BE GRANTED FOR BOSTON UNIVERSITY**

Baylor cannot prevail on its claims for trademark infringement based on Boston University's use of an interlocking BU mark.  By the parties' express Agreement, "there is no conflict or likelihood of confusion between Boston University's use of the mark 'BU' in connection with goods and services associated with Boston University and Baylor University's use of the same mark in connection with goods and services associated with Baylor University."  Ex. A, p. 1, intro. ¶.  And in any event, the Agreement makes clear that Baylor has consented to Boston University's use of the mark.  *Id.* at p. 2, last ¶.  Each of these reasons separately is fatal to Baylor's claims.  *See American Rice, Inc.*, 518 F.3d at 329 (claim for trademark infringement requiring use "without the registrant's consent… where such use is likely to cause confusion, or to cause mistake or to deceive").

     **a.    The Agreement Expressly Covers the
         Interlocking BU Mark and Allows its Use by Boston University.**

The first line of the Agreement, the RE line, defines the scope of its subject matter and as copied below states that the Agreement relates to three specific but similar interlocking "BU" trademarks:

> Re:    Application Serial No. 667,069, and Registration Numbers 1,468,277 and 1,474,216 for the mark "BU"

Ex. A, p. 1.  This unambiguously defines "the mark 'BU'" as the three listed trademarks, each of which is an interlocking BU.  Baylor's Complaint at ¶15 names the two registered marks (Nos. '277 and '216, Exs. B and C) and the one then pending application (667,069, which later registered as No. 1,558,080, Ex. D) as examples of the interlocking BU:

| Mark | Registration No. | Goods/Services |
|---|---|---|
| | 1558080 | Class 25: clothing, namely T-shirts, shorts, sweatshirts, sweaters |
| | 1468277 | Class 16: calendars, notebooks, decals, notecards |
| | 7434569 | Class 18: Duffel bags; overnight bags; travel cases; traveling bags; athletic bags; backpacks; tote bags; purses; wristlet bags, clutch bags; fanny packs; sack packs, namely, drawstring bags used as backpacks; briefcases; wallets; credit card cases and holders; identification card holders; luggage tags; umbrellas; animal leashes |
| | 1474216 | Class 21: cups, mugs, tumblers, and glasses |

Complaint ¶15 (highlighting added).

In short, Baylor's Complaint alleges infringement of the very trademarks that are specified in the Agreement as "the mark 'BU.'" The Agreement further expresses plainly that "there is no conflict or likelihood of confusion between Boston University's use of *the mark 'BU'* in connection with goods and services associated with Boston University and Baylor University's use of *the same mark* in connection with goods and services associated with Baylor University." Ex. A, p. 1, intro. ¶ (emphases added). The meaning is clear: both universities had been using the interlocking BU and may continue to use the same interlocking BU, shown in the three named marks, in connection with the goods and services of each university, without risk of confusing the public and without objection from the other university. *See id.* at p. 2, last ¶ ("Boston University and Baylor University…hereby consent each to the other's use of the mark").

6

**b.    The Agreement Does Not Rely on Any Stylistic Differences to Distinguish Between Baylor's and Boston University's Uses of the Mark.**

The Agreement does not indicate any intent to limit either university to a particular stylization of "BU." It does not in any way indicate that the parties limited Boston University's use to a "side-by-side BU" or some other stylization. On the contrary, the Agreement repeatedly refers to the parties' agreement related to *the mark* rather than plural marks. *See e.g.* Ex. A, RE: line ("*the mark 'BU'*"), Intro. ¶ ("*Boston University and Baylor University's use of the same mark*"), ¶1 ("both schools have used *the mark* for at least seventy-five years"), ¶2 ("*the mark*"), ¶3 ("goods bearing *the mark*" and "products bearing *the mark*"), ¶4 ("the public would not benefit from the imposition of a restriction on the use of *the mark 'BU'* by either school") (emphases added).

Notably, the parties' Agreement regarding lack of confusion and providing consent is stated in terms of "their respective uses of the same mark," rather than their uses of *respective marks*. *Id.* at p. 2, last ¶.[3] Finally, notably missing from the Agreement is any mention of stylistic differences between each school's "BU." If the intent of the Agreement had been to limit either side to a particular stylization, the details of that stylization would have necessarily been cited as a significant and distinguishing factor between each school's use of the mark. In addition, had the parties negotiated that a party was prohibited from using a particular stylization, that restriction would have been set forth in the Agreement, or more likely the Agreement would have *prohibited* the use of the particular stylization. Yet, as described above, the Agreement does not prohibit either party's use of the interlocking BU, but instead expressly permits it. As written, there is no support for Baylor's reading of the Agreement. *Perthuis v. Baylor Miraca Genetics Laboratories, LLC,* 645 S.W.3d 228, 236 (Tex. 2022) ("Judicial interpretations of contracts are governed by what the parties said in their

---

[3] Page 3 of the Agreement mentions respective marks only to clarify that each side remains responsible for pursuing its own enforcement actions against third parties. *Id.* at p. 3, first ¶.

7

contract, not by what one side or the other alleges they intended to say but did not.") (internal quotations omitted).

       **c.      The File History of Baylor's '069 Trademark Application Confirms the Intent of the Parties.**

When Baylor applied to register an interlocking BU mark in 1987, Boston University filed an Opposition with the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB") in January 1988. *See* Complaint ¶19-second occurrence. The opposed trademark application was Application Serial No. 667,069, for an interlocking BU in class 25. *Id.*; *see also* Ex. D. Again, that is the same '080 trademark registration that Baylor lists as one of the asserted trademarks at ¶15 of the Complaint. In its Notice of Opposition, Boston University alleged that "[t]he mark proposed for registration by the Applicant, namely a graphic design ***using the stylized letters 'BU'***, is substantially similar to the Opposer's mark." Ex. E (Opposition), ¶6 (emphasis added).

Applicant Baylor filed an Answer to the Opposition explaining that it intended "to file an amendment to its Application … to convert such Application to one for concurrent use, together with a Consent Agreement entered with the Opposer Boston University." *See* Ex. F (Answer to Opposition). Baylor explained in its Answer many of the same positions regarding lack of confusion that were later memorialized in the parties' Agreement. *Id.* Baylor's Answer on information and belief also "agree[d] with the contention of Boston University that [Boston University] first used the 'BU' mark in 1869, and in connection with clothing since no later than 1894." *Id.* ¶6; *see* Ex. E ¶2 ("Boston University…has since 1869 used the mark 'BU' in connection with the educational services…and has used the mark 'BU' on a variety of goods…since no later than 1894."). In addition, Baylor asserted that it believed "there is no likelihood of consumer confusion in regard to the marks." *Id.* at ¶11.

Consistent with the statement in Baylor's Answer, the parties ultimately settled the Opposition by entering the Consent Agreement, and as contemplated by the last paragraph of the Agreement (Ex. A, p. 3), Boston University withdrew its Opposition and filed a copy of the Agreement with the TTAB. Ex. G. This allowed Baylor's Application Serial No. 667,069 to proceed to registration as Registration No. 1,558,080 (Ex. D). *See* Complaint ¶19-second occurrence, ¶22.

This additional context confirms what is clear in the Agreement. The Agreement memorialized the parties' consent to each other's concurrent use "of the same mark," which included the interlocking BU shown in the '069 trademark application and in the '277 and '216 registrations "for the mark 'BU.'" Baylor's contention that the Agreement never contemplated Boston University's use of the interlocking BU is baseless -- concurrent use of "the same mark" was the whole point of the Agreement. Baylor's application for a trademark registration for an interlocking BU is what prompted Boston University to file its Opposition; the interlocking BU mark is front and center on the face of the Agreement and specifically identified as the basis for the Agreement; and Baylor secured registration of the mark only because of Boston University's consent. It is manifestly unfair for Baylor, nearly 40 years after agreeing otherwise, to attempt to rewrite the Agreement and seek to interfere with Boston University's use of a mark that it has been using for decades.

## IV.     CONCLUSION

The Consent Agreement is clear and unambiguous in permitting Boston University's use of the interlocking BU mark. Baylor therefore cannot prevail on its claims for trademark infringement and unfair competition under federal or Texas law, and the Court should issue judgment on the pleadings with prejudice in favor of Boston University.[4]

---

[4] As examples of the absurdity of Baylor's claim that Boston University "recently commenced use of an interlocking BU design" (Complaint ¶19-first occurrence), the Court can take notice of the 1880s and 1970s uses of interlocking BU marks by Boston University, *see* Exhibits H and I.

Dated: April 17, 2026

Respectfully submitted,

*/s/ John J. Cotter*
_____

John J. Cotter *(pro hac vice)*
MA Bar No. BBO554524
David J. Byer *(pro hac vice)*
MA Bar No. BBO544411
K&L Gates LLP
1 Congress Street, Suite 2900
Boston, MA 02114
Tel.: (617) 261-3178
Fax: (617) 261-3175
John.Cotter@KLGates.com
David.Byer@KLGates.com

Henry Pogorzelski
TX Bar No. 24007852
K&L Gates LLP
2801 Via Fortuna, Suite 650
Austin, Texas 78746
Tel.: (512) 482-6800
Fax: (512) 482-6859
Henry.Pogorzelski@KLGates.com

ATTORNEYS FOR DEFENDANT
TRUSTEES OF BOSTON UNIVERSITY

10

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed with the Clerk of the Court on April 17, 2026, using the CM/ECF System, which will send notification of such filing to all registered ECF users, including all attorneys of record.

*/s/ John J. Cotter*
John J. Cotter